OPINION OF THE COURT BY JUSTICE KELLER
*553 An Ohio County jury found Ronnie Leach guilty of six counts of Sexual Abuse in the First Degree, victim under 12; one count of Sexual Abuse in the First Degree; and four counts of Sodomy in the First Degree, victim under 12. He was sentenced to life in prison. This appeal followed as a matter of right. Having reviewed the arguments of the parties, we affirm the judgment of the Ohio Circuit Court.
I. BACKGROUND
In 2014, Misty S.[1] reported to police that Ronnie Leach had sexually assaulted her from approximately 1985 to 1988. At that time, Leach and Misty S. 's aunt, Janet Welch, were married. These assaults occurred over a period of years, when numerous members of the family were gathered at Leach's home. She disclosed that Leach kissed her and fondled her breasts. He digitally penetrated her on a number of occasions. He forced her to touch his penis. He performed oral sex on her, and he forced her to perform oral sex on him. These incidents occurred both outside of Leach's house, in the woods at the back of his property, and also inside of his house, in a bedroom and a laundry room. When they would occur in the woods at the back of Leach's property, they occurred while playing a game called "taxi." During the course of this game, various people would pile into an old car and drive it around the property. The driver would make various stops around the property, dropping off different combinations of people, returning a few minutes later to pick them back up. Leach would sexually assault Misty S. when the two of them were dropped off alone, while waiting for the "taxi" to return to pick them up. Misty S. did not report this abuse until 2014, when she heard that Leach's stepdaughter, April T.[2] , had also accused him of sexually abusing her. Additional facts will be developed as needed in the analysis of the legal issues in this case.
II. ANALYSIS
Leach argues several grounds for relief: (1) the trial court erred when it allowed the government to present KRE[3] 404(b) evidence; (2) the trial court erred when it did not allow the defense to present KRE 412 evidence; and (3) the trial court erred when it allowed Facebook messages into evidence when they were not properly authenticated. We will address each of these contentions in turn.
A. Standard of Review
The standard of review on evidentiary issues is abuse of discretion. Clark v. Commonwealth, 223 S.W.3d 90, 95 (Ky. 2007) and Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Goodyear Tire & Rubber Co. v. Thompson, 11 S.W.3d 575, 581 (Ky. 2000), Simpson v. Commonwealth, 889 S.W.2d 781, 783 (Ky. 1994), Woodard v. Commonwealth, 147 S.W.3d 63 (Ky. 2004). All of the issues on appeal in the present case are evidentiary issues, and therefore will be reviewed using an abuse of discretion standard.
*554 B. The trial court did not err in admitting KRE 404(b) evidence.
1. KRE 404(b) in general
KRE 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may be admissible if offered for some other purpose. Because the degree of the potential prejudice associated with evidence of this nature is significantly higher, exceptions allowing evidence of collateral criminal acts must be strictly construed. As a result, KRE 404(b) is exclusionary in nature. Bell v. Commonwealth, 875 S.W.2d 882, 889 (Ky. 1994). The provision offers no easy formula for resolution of issues that are inherently difficult and that require a very careful balancing of competing interests.[4] As Professor Lawson states, "With no black-letter rules, bright lines, or shortcuts to guide the users of 404(b), the need for careful analysis and reasoned judgment is absolutely essential."[5] The admissibility of KRE 404(b) evidence is within the discretion of the trial court. Clark, 223 S.W.3d at 96.
In order to determine if other bad acts evidence is admissible, the trial court should use a three-prong test: (1) Is the evidence relevant? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect? Purcell v. Commonwealth, 149 S.W.3d 382, 399-400 (Ky. 2004). The first prong of the test is whether the proffered evidence is relevant for a purpose other than criminal disposition. KRE 404(b)(1) provides a list of other acceptable uses of "other bad acts" evidence. This list, however, is not exhaustive but illustrative. Tamme v. Commonwealth, 973 S.W.2d 13, 29 (Ky. 1998). In reviewing relevance, courts must determine that the "other bad acts" evidence is offered to prove material facts that are actually in dispute.
After determining relevancy, the trial court must determine if the evidence of the uncharged crime is sufficiently probative of its commission by the accused to warrant its introduction into evidence. It is sufficiently probative if the trial judge believes "the jury could reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts." Parker v. Commonwealth, 952 S.W.2d 209, 214 (Ky. 1997).
Finally, after determining relevancy and probativeness, the trial court must weigh the prejudicial nature of the "other bad acts" evidence versus its probative value. Only if the potential for undue prejudice substantially outweighs the probative value of the evidence must it be excluded. "Prejudice means that evidence produces an emotional response that inflames the passions of the triers of fact or is used for an improper purpose."[6] This goes beyond evidence that is merely detrimental to a party's case. The trial courts have great discretion in weighing prejudice versus probativeness, but do not have discretion to fail to weigh these factors.
2. The trial court did not err in allowing the testimony of Tracy C.[7]
The Commonwealth filed notice under KRE 404(c) of its intention to introduce *555 other bad acts evidence regarding Leach's sexual assault of Tracy C. as modus operandi. Tracy C. testified that in 1987, when she was 11 years old, Leach sexually assaulted her by kissing her, touching her breasts, and trying to get in her pants. She could not remember if he had actually touched her vagina. She and Leach were second cousins by marriage - Leach was married to her mother's cousin. Leach sexually assaulted her when she was at his house with various other members of the family. She testified that the incident occurred while they were playing a game of hide and seek on four-wheelers in the woods at the back of his property. She was riding on a four-wheeler with him, hiding from the people on the other four-wheeler when he assaulted her. She said he first kissed her and then touched her breasts. He also touched inside of her pants. Shortly thereafter, she disclosed these allegations and was not alone with Leach again. Leach pled guilty to assault in the fourth degree for this incident.
The first question in analyzing the admissibility of the Tracy C. allegations is whether they are relevant for a purpose other than to prove the criminal disposition of the accused. As stated before, the list of exceptions in KRE 404(b)(1) is not exhaustive but illustrative. Tamme, 973 S.W.2d at 29. Prior bad acts may be admitted to show un-enumerated exceptions such as common scheme or plan or modus operandi. English, 993 S.W.2d at 943-45.
The rule for use of a prior crime to establish intent and knowledge by modus operandi has traditionally been stated as: "In order to prove the elements of a subsequent offense by evidence of modus operandi, the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same mens rea. If not, the evidence of prior misconduct proves only a criminal disposition and is inadmissible." Id. at 945. "[A]s a prerequisite to the admissibility of prior bad acts evidence, we now require the proponent of the evidence to 'demonstrate that there is a factual commonality between the prior bad act and the charged conduct that is simultaneously similar and so peculiar or distinct that there is a reasonable probability that the two crimes were committed by the same individual." Clark, 223 S.W.3d at 97 (citing Commonwealth v. Buford, 197 S.W.3d 66, 71 (Ky. 2006) ). "Although it is not required that the facts be identical in all respects, 'evidence of other acts of sexual deviance ... must be so similar to the crime on trial as to constitute a so-called signature crime.' " Dickerson v. Commonwealth, 174 S.W.3d 451, 469 (Ky. 2005) (quoting Rearick v. Commonwealth, 858 S.W.2d 185, 187 (Ky. 1993) ). This Court has further stated, "conduct that serves to satisfy the statutory elements of an offense will not suffice to meet the modus operandi exception. Instead, the modus operandi exception is met only if the conduct that meets the statutory elements evidences such a distinctive pattern as to rise to the level of a signature crime." Clark, 223 S.W.3d at 98.
Analyzing the relevancy of other bad acts evidence under a modus operandi theory is incredibly fact specific. This case is no different. Here, while the two crimes are not exactly identical, they are strikingly similar. Both sets of events took place during the same approximate time frame. Leach sexually abused and sodomized Misty S. between 1985 and 1989. Leach sexually abused Tracy C. in 1987 or 1988. Both girls are related to Leach by marriage - Misty S.'s aunt was married to Leach, and Tracy C. was Leach's second cousin by marriage. Both were similar *556 ages when Leach perpetrated the abuse. Misty S. was between 9 and 14 years old when Leach sexually abused and sodomized her. Tracy C. was 11 years old when Leach sexually abused her. Leach's sexual abuse of both of the girls progressed from kissing to fondling. While these similarities weigh in favor of a modus operandi, they do not weigh heavily in favor, as they mostly go towards the statutory elements of the crimes. Most striking, however, is the way in which Leach secluded each of the girls in order to perpetrate his abuse. In both cases, he devised a game to play in the woods behind his house, using a motor vehicle, to get the girls alone. In Misty S.'s case, this was a game called "taxi", and it used an old car. In Tracy C.'s case, this was a game of hide and seek which used four-wheelers. In the course of these games, he was able to be alone in the woods behind his house with each of the girls. In both cases, he could use the sound of the approaching motor vehicle to warn him that others were getting close.
The two crimes are not identical, and the differences are worth discussing as well. The acts that Leach performed on each of the girls were different. He kissed Misty S., touched her vagina, digitally penetrated her, forced her to touch his penis, performed oral sex on her, and forced her to perform oral sex on him. Leach only kissed Tracy C. and touched her breasts. The sexual acts were perpetrated on Misty S. over a period of years, while the acts performed on Tracy C. all occurred on one day. These differences, however, do not counteract the similarity of the crimes, especially because Tracy C. disclosed the abuse very close in time to its occurrence and was not alone with Leach again.
There is one other difference in the crimes that is significant. This difference is the location in which the abuse occurred. Tracy C.'s abuse occurred only in the woods behind Leach's house. The abuse perpetrated on Misty S. occurred in the woods behind Leach's house, as well, but also in a bedroom and laundry room in Leach's house. This Court has previously found that the exact geographic location of the crimes is not dispositive on the issue. Clark, 223 S.W.3d at 99. The importance of this difference is lessened even more when considered in light of the fact that Misty S.'s abuse occurred for years while Tracy C.'s abuse occurred on one day.
The next prong of the three-prong test is probativeness. In this case, Leach was criminally charged with Sexual Abuse of Tracy C. He pled guilty to an amended charge of assault in the fourth degree and served five weekends in jail. A conviction is not required for evidence of another crime to be admissible. In fact, this Court has held that even an acquittal does not necessarily bar admission of other bad act evidence. Commonwealth v. Hillebrand, 536 S.W.2d 451, 454 (Ky. 1976). Further, no contradictory evidence was presented at trial to lessen the probativeness of Tracy C.'s testimony. Based on previous precedent and the facts of this case, the evidence of Leach's sexual abuse of Tracy C. is sufficiently probative of his commission of the offense to warrant introduction into evidence.
Finally, the trial court weighed whether the probative value of the evidence was substantially outweighed by its prejudicial effect. The limiting instruction given by the trial court must be taken into consideration in this balancing test. As some commentators note, "Rules 403 and 105 are interrelated, because a Judge in determining the prejudice to be suffered from offered evidence must necessarily take into account whether this prejudice can be sufficiently ameliorated by the limiting instruction. The more effective the instruction in controlling prejudice, the less prejudice *557 is taken into account in the Rule 403 balancing process."[8] Lawson notes that the end result has been described as follows, "[T]here is a strong presumption that proper limiting instructions will reduce the possibility of prejudice to an acceptable level."[9] Evidence of other bad acts is always prejudicial. It is even more so in a sexual offense case where the other bad act is another sexual offense, perpetrated on a different victim. The rule is clear, however, that the probative value must be substantially outweighed by the prejudicial effect. In this case, we do not believe that any prejudice caused by the introduction of Tracy C.'s testimony substantially outweighed its probative value.
Further, the trial judge gave an admonition to the jury, to which defense counsel agreed. Any undue prejudice caused by the admission of this evidence was cured by this admonition. Lang v. Commonwealth , 556 S.W.3d 584, 594 (Ky. 2018).
This court acknowledges that determinations regarding the admissibility of other bad acts evidence, especially modus operandi evidence, are extremely difficult, given their fact specific nature. Trial judges are given discretion in making these determinations. This Court, however, cautions against expanding these exceptions. KRE 404(b) is a rule of exclusion and admission of other bad acts evidence should be done only with the greatest of care. Tracy C.'s testimony in this case tests the limits of the modus operandi exception to the rule excluding other bad acts. This case should not be construed to expand those limits.
3. The trial court did not err in allowing testimony regarding April T.'s allegations of sexual abuse against Leach.
The next issue raised by the Appellant concerns the admissibility of Misty S.'s knowledge of April T.'s allegations of sexual abuse against Leach. In 2014, April T., Leach's stepdaughter, disclosed that Leach had sexually abused her. When Misty S. heard about April T.'s allegations against Leach, she decided to report her abuse to police. She testified that when she heard that someone else made allegations against Leach, she felt guilty for not coming forward sooner regarding the abuse he perpetrated on her. She felt that her delayed reporting had allowed Leach to abuse another family member, and she wanted to ensure that Leach was not able to do this to anyone else.
The Commonwealth introduced this evidence under KRE 404(b)(2) which states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible ... [i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." This Court dealt with the "inextricably intertwined" exception previously when it stated, "[T]he key to understanding this exception is the word 'inextricably.' The exception relates only to evidence that must come in because it "is so interwoven with evidence of the crime charged that its introduction is unavoidable." Funk v. Commonwealth, 842 S.W.2d 476, 480 (Ky. 1992), quoting Lawson, Kentucky Evidence Law § 2.20, at 37 (2nd ed. 1984). The Court goes on to say that this type of evidence is only admissible "where it would be necessary to suppress facts and *558 circumstances relevant to the commission of the offense charged in order to exclude evidence of the prior offense." Id. While a statement of the rule is relatively simple, the application of the rule is not, especially in these circumstances.
This Court has previously held that other bad acts of threats or violence are admissible to explain why a victim delayed reporting a crime. See Gray v. Commonwealth, 534 S.W.3d 211 (Ky. 2017) and Clark v. Commonwealth, 267 S.W.3d 668 (Ky. 2008). We have also held that a prior instance of sexual abuse on the same victim is admissible to explain why she delayed disclosing the abuse. Koteras v. Commonwealth, No. 2012-SC-000649-MR, 2014 WL 5410233 (Ky. Oct. 23, 2014). This Court has not previously addressed the admissibility of other sexual abuse on a different victim when it is offered to explain why the victim in the instant case did disclose her abuse. In our review, only one case could be found where another jurisdiction addressed this precise issue.
In State v. Franks, 376 Mont. 431, 335 P.3d 725 (2014), the child victim disclosed that she had been raped by Franks four years after the rape occurred. During her interview with the police, she stated that she decided to come forward at that time because she had seen a newspaper article reporting that Franks had been accused of molesting a five-year-old boy. She told the detective that she wanted to help in that case.
Prior to trial, Franks objected to the admission of evidence regarding those other allegations, as he had been acquitted. He argued that the evidence was more prejudicial than probative and was improper character evidence. The State asserted that it intended to offer the evidence only to explain that the child's delayed disclosure was prompted by the newspaper article. The trial court admitted the evidence, finding that it was not offered as evidence of Franks' character, but only to explain the child's disclosure. The trial court said that Franks could offer evidence that he was acquitted of the charge in order to counteract any undue prejudice.
At trial, the evidence as to how the newspaper article impacted the child's disclosure was somewhat contradictory. Despite that, evidence of the prior allegations was admitted, with an admonition that the evidence should only be used to show why the child decided to disclose the incident and not for any other reason. Despite the trial court's ruling and admonition, the State still used the evidence of the prior allegation to argue to the jury that Franks was a child molester and, therefore, was more likely to be guilty of this crime.
After the trial, Franks made a motion for a new trial, arguing, among other things, that the admission of the other bad act evidence found in the newspaper article was in error. He argued that given the way the evidence was used, its prejudice substantially outweighed its probative value. The trial court denied that motion.
The Supreme Court of Montana reversed the trial court's denial of Franks' motion for a new trial. That Court found that the State used the other bad act evidence in a way that exceeded its permissible use and resulted in unfair prejudice to Franks. The Court found that when the trial court ruled on Franks' motion for a new trial, it had the benefit of hindsight to see how the State actually used the evidence, as opposed to how they said they were going to use the evidence. The Court said the State manipulated the safeguards the trial court attempted to put into place, which resulted in unfair prejudice.
The Supreme Court of Montana went on to provide guidance to its state's trial courts in how to deal with this type of *559 evidence in the future. The Court said, "the wiser course would have been to withhold ruling on its admissibility. The issue could have been revisited in the event that the delayed disclosure became an issue for [the victim]'s credibility." Id. at 730. This approach is instructive to our analysis today.
In the instant case, Leach's attorney attacked Misty S.'s credibility, and did so, in part, by questioning her decision to wait approximately 30 years before disclosing the abuse. This strategy may have been employed only because of the trial court's admission of the evidence, but we cannot go back in time and know that. KRE 103(d)[10] was adopted to encourage the use of motions in limine. Lawson, Kentucky Evidence Law § 1.10[5], at 45. While some issues are appropriate and advisable to be resolved pretrial, in some instances it may be best to withhold ruling on the admissibility of evidence until trial. In the future, it may be advisable for trial courts to withhold ruling on the admissibility of this type of evidence until the delayed disclosure is used to impeach the credibility of the witness.
This Court finds that in this case, under these facts, Misty S.'s testimony about April T.'s allegations against Leach was relevant to explain why Misty S. disclosed Leach's abuse after almost 30 years. The prejudicial effect of that testimony did not substantially outweigh its probative value. Misty S.'s testimony was very general and vague about April T.'s allegations. She did not go into any detail about them. She merely said that she became aware that someone else had "made allegations." Therefore, the prejudice was slight. Further, the trial court gave an admonition, to which the defense agreed, that acted to cure any undue prejudice.[11]
C. The trial court did not err when it excluded evidence that Misty S. made prior allegations of sexual misconduct against another person.
Leach next claims that the trial court erred when it excluded evidence that Misty S. made prior allegations of sexual misconduct against another person. We find that the trial court did not abuse its discretion in excluding this evidence.
Leach filed notice of his intent to introduce evidence that Misty S. made allegations of sexual misconduct against Herbert Napier in 2000 under KRE 412, often referred to as the Rape Shield Law. Leach stated that he did not intend to inquire into the specifics of the allegations or the validity of them. He stated that he merely wanted to question Misty S. about the reasons for her contemporaneous report of the conduct of Napier, but delayed report of the conduct of Leach.
KRE 412 exists primarily "to protect alleged victims of sex crimes against *560 unfair and unwarranted assaults on character."[12] The rule generally excludes evidence of specific acts of sexual behavior by the victim as well as evidence of sexual predisposition of the victim. It does, however, allow for certain exceptions in a criminal case. None of those exceptions are applicable in this case, as this Court's precedent is dispositive of the issue.
This Court has previously held "evidence, including cross-examination, concerning an alleged sex-crime victim's allegations of sexual impropriety against another is not admissible at trial unless the proponent of the evidence establishes at a KRE 104 hearing that the prior accusation was demonstrably false." Dennis v. Commonwealth, 306 S.W.3d 466 (Ky. 2010). We reaffirm this ruling here today. Leach made no argument that Misty S.'s allegations against Napier were false. Therefore, the trial court did not abuse its discretion in prohibiting the introduction of evidence regarding those allegations. A balancing test was not required.
Leach contends that even if evidence of Misty S.'s allegations against Napier were inadmissible, the Commonwealth opened the door to its admission. Under the theory of curative admission, when a witness makes an inadmissible assertion, the opposing party is then permitted to introduce evidence to the contrary that would otherwise be inadmissible. Norris v. Commonwealth, 89 S.W.3d 411, 414 (Ky. 2002). This simply is not the case here. The Commonwealth did not introduce any inadmissible evidence, nor was any evidence objected to, that would allow for the introduction of the otherwise inadmissible evidence of Misty S.'s allegations against Napier. Again, the trial judge did not abuse his discretion in excluding the evidence.
D. Any error in the authentication of the Facebook messages purportedly between Misty S. and Janet Welch was waived by Leach.
The final argument Leach makes is that the trial court erred in admitting a printout of Facebook messages purportedly between Misty S. and Janet Welch. Janet Welch is Misty S.'s aunt and Ronnie Leach's ex-wife. Leach made an oral motion to exclude this evidence before testimony began on the morning of the second day of trial. His objection at that time was framed as a discovery violation and was overruled by the trial court. Leach then chose to ask Janet Welch, his witness, about these messages before the Commonwealth did so. He did not question her about the content of the messages, only their existence, and did not introduce the printout of the messages into evidence. This Court has previously held "that, as a general rule, once a motion in limine to exclude evidence has been overruled, a party may go forward with adverse evidence to avoid the appearance of concealment and still 'preserve error for appellate review.' " O'Bryan v. Hedgespeth, 892 S.W.2d 571, 575 (Ky. 1995) (quoting KRE 103(d) ).
On cross-examination of Ms. Welch, the Commonwealth questioned Welch about the content of the Facebook messages. Leach objected to this, arguing that the messages had not yet been properly authenticated, and that the printout of the messages should properly be authenticated by Misty S. The trial judge allowed the Commonwealth to question Ms. Welch about the content of the messages but did not admit the printout at that time.
*561 On rebuttal, the Commonwealth called Misty S. to authenticate the printout of the messages. She testified that the messages were true and accurate representations of the messages on Facebook, and the trial court admitted the copies into evidence. The only objection made by Leach at that time was, "We continue with our objection from earlier." It is unclear what exactly that objection was, but it can be presumed that it was the objection related to the discovery violation as opposed to any objection regarding authentication.
At the trial court, Leach initially objected to the admission of the Facebook messages because the Commonwealth provided him with a printout of the messages for the first time on the morning of the second day of trial. During Welch's testimony, Leach again objected to the Facebook messages, but this time on the basis of authentication. Leach's trial counsel argued that the correct way for the Commonwealth to authenticate the messages was through Misty S. The Commonwealth then authenticated and admitted the messages in this exact manner. On appeal Leach only argues that the trial court erred in admitting the printout of the Facebook messages because they were not properly authenticated. However, as stated above, the Commonwealth authenticated the Facebook messages in the exact manner that Leach argued was appropriate at the trial court. Therefore, any error in the authentication of the Facebook messages was waived by Leach.
III. CONCLUSION
For the foregoing reasons, the judgment of the Ohio Circuit Court in this matter is affirmed.
All sitting. All concur.

We use the first name and last initial of all victims who were minors at the time the crimes occurred to protect their anonymity.

We use the first name and last initial of all victims who were minors at the time the crimes occurred to protect their anonymity.

Kentucky Rules of Evidence.

Robert G. Lawson, The Kentucky Evidence Law Handbook § 2.30[1][b], at 131 (5th ed. 2013).

Lawson, supra note 2, § 2.30[2][a], at 132.

Lawson, supra note 2, § 2.25[3][d], at 135 (4th ed. 2003).

We use the first name and last initial of all victims who were minors at the time the crimes occurred to protect their anonymity.

1 Saltzburg, Martin, & Capra, Federal Rules of Evidence Manual § 15.02[4] (8th ed. 2002).

Lawson, supra note 2, § 1.05[3] at 23-24, quoting United States v. Kilcullen, 546 F.2d 435, 447 (1st Cir. 1976).

"Motions in limine. A party may move the court for a ruling in advance of trial on the admission or exclusion of evidence. The court may rule on such a motion in advance of trial or may defer a decision on admissibility until the evidence is offered at trial. A motion in limine resolved by order of record is sufficient to preserve error for appellate review. Nothing in this rule precludes the court from reconsidering at trial any ruling made on a motion in limine."

The trial court's admonition on this issue was clear and concise. It can serve as a model when this issue arises in other courts across the Commonwealth. The trial judge stated:
Ladies and gentlemen, I need to admonish you - give you an admonition - about a couple of things. One is that testimony by this witness about other allegations is not to be considered by you for any purpose in this case with regard to your determination of the guilt of this defendant. That should not be used against him and should be considered only insofar as it helps explain why this witness made a report in 2014, as she said.

Evidence Rules Study Committee, Kentucky Rules of Evidence - Final Draft, p. 36 (Nov. 1989).