# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 15, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0014-MR

DELVIN BULLOCK            APPELLANT

V.
       ON APPEAL FROM JEFFERSON CIRCUIT COURT
       HONORABLE A. C. MCKAY CHAUVIN, JUDGE
       NO. 20-CR-000855

COMMONWEALTH OF KENTUCKY            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Delvin Bullock was convicted by a jury of first-degree assault upon his wife and, upon the jury's recommendation, sentenced by the trial court to twenty years in prison. Bullock now appeals his conviction as a matter of right asserting the trial court abused its discretion by allowing testimony regarding uncharged domestic abuse, erred in determining that the probative value of photographs of his wife's injuries was not outweighed by their prejudicial effect, and these cumulative errors require reversal. Finding no error, we affirm his conviction and sentence.

# I.    FACTUAL AND PROCEDURAL HISTORY

Bullock and his wife married in May of 2019. His wife[1] would testify that during the marriage she was the target of frequent physical abuse inflicted by Bullock and that they were both suffering the effects of addiction. There were no police reports regarding domestic violence and Bullock's wife never sought a protective order testifying, "What's the point of calling the cops?"

The parties were separated by March 21, 2020, when Bullock sent two text messages to his wife which contained the following:

> When my $ come. I'm leaving the city. I'll take my chances elsewhere. I'm not gonna beat you're a**, tho you got it coming. Had I caught you last night, nobody, not even God himself could've saved you.
> . . . .
>
> I'm not going to put hands on you L[.] If I do, I'll surley kill you. You deserve it.
> . . . .
>
> B**** when you leave take everything with you, I'm not in the mood for you! You better sneak out cause if I catch yor smartass outside, I promise to make an example out of you!  Talk crazy if you want to. After the shit you pulled last night, I f****** dare you. Just 1 little anything!!!!! Please call my bluff!!!!

Bullock's wife testified that when she received these texts she was actively trying to avoid him and was living with friends.

A Louisville Metro Police Department (LMPD) detective testified that Bullock called the department twice on March 31, 2020, about his "missing" wife and again called two more times early the next morning. Bullock called at

---

[1] We do not provide her name because this case involves domestic violence.

least two more times on April 2, 2020, and filed a missing person report giving multiple potential locations for his wife. The officer who took Bullock's report testified that Bullock did not seem worried about his wife but seemed to be trying to get her or her drug dealer in legal trouble.

On April 3, 2020, Bullock's wife texted Bullock to let him know that she was fine and the two discussed meeting. The two met that evening in the parking lot of the Louisville Urban League. Bullock was driving a white Lincoln and the couple "drove around for a bit" in the Bullock's car. Bullock was drinking vodka in the car and an argument ensued. Bullock's wife got out of the vehicle back at the Urban League lot. Surveillance footage showed his wife being hit by Bullock's vehicle and being pulled under the vehicle as it drove off.

Bullock's wife was found in the road approximately two blocks away and taken by ambulance to University of Louisville Hospital. Bullock himself had left the scene. When confronted with a photo of his wife being hit by a car that appeared to be his, Bullock said that he didn't remember hitting her, "but if you tell me that that's her blood under the car, then it looks like I hit her, I don't dispute that."

Bullock was charged with attempted murder, assault in the first degree, and failure to stop and render aid. The trial court ultimately granted Bullock's motion to dismiss the failure to stop and render aid charge at the close of the Commonwealth's case. The jury acquitted Bullock of attempted murder but found him guilty of first-degree assault under Kentucky Revised Statutes (KRS) 508.010 for either intentionally or wantonly striking his wife and causing

3

serious physical injuries. The jury recommended the maximum sentence of twenty years' in prison which was imposed by the trial court.

## II. ANALYSIS

Bullock argues improper evidence was admitted at trial. We review the trial court's evidentiary decisions under an abuse of discretion standard and will only reverse the trial court if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

### A. The Trial Court did not Abuse its Discretion When it Allowed Testimony Regarding Prior Uncharged Domestic Violence Incidents.

Prior to trial, the Commonwealth gave notice, pursuant to Kentucky Rule of Evidence (KRE) 404(b), that it intended to introduce testimony of acts of domestic violence that Bullock had allegedly committed against his wife. Bullock's counsel moved to exclude any reference to uncharged allegations of domestic violence. The trial court denied the motion determining that "unfair prejudice is . . . somewhat limited and would be even more so with an appropriate admonition." The trial court also noted "the fact that it's not a conviction is of no consequence, particularly in a domestic violence situation because so many of those go unreported."

During her trial testimony, Bullock's wife stated that Bullock began physically abusing her following their marriage and that he would choke her to the point of her losing consciousness. During one such assault, she not only lost consciousness but also lost control of her bladder and bowels. Once he hit

4

her in the face with a pint bottle causing her to bleed. She also stated that "when you get two addicts together you know it's never good."

Bullock's counsel was able to impeach his wife on cross examination with the fact that her testimony was uncorroborated and there were no police reports or court actions regarding abuse in the marriage. Counsel was also able to focus on her own admitted addiction and drug usage.

The trial court gave a lengthy admonition to the jury regarding the testimony.

Bullock argues that the trial court erred in allowing the admission of prior alleged acts of domestic violence and this prejudiced him when his wife's testimony was used at trial to establish his poor character.

On appeal, a trial court's ruling admitting other-act evidence is reviewed for abuse of discretion. *Conley v. Commonwealth*, 599 S.W.3d 756, 772 (Ky. 2019) (citations omitted). When we conduct our own analysis, we must still be mindful of, and give deference to, the discretion of the trial court in matters of KRE 404(b) admissibility. *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007).

KRE 404(b), which concerns character evidence regarding "other crimes, wrongs, or acts[,]" provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

Notably, "the list provided in KRE 404(b)(1) is illustrative rather than exhaustive." *Kelly v. Commonwealth*, 655 S.W.3d 154, 165 (Ky. 2022). The provisions of KRE 404(b) offer no easy formula for resolution of issues that are inherently difficult and that require a very careful balancing of competing interests. "In order to determine if other bad acts evidence is admissible, the trial court should use a three-prong test: (1) Is the evidence relevant? (2) Does it have probative value? (3) Is its probative value substantially outweighed by its prejudicial effect?" *Leach v. Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019).

"[A]fter determining relevancy and probativeness, the trial court must weigh the prejudicial nature of the 'other bad acts' evidence versus its probative value. Only if the potential for undue prejudice substantially outweighs the probative value of the evidence must it be excluded." *Id.* "The prejudice must go beyond that which is merely detrimental to a party's case and be of such character that it 'produces an emotional response that inflames the passions of the triers of fact or is used for an improper purpose.'" *Kelly*, 655 S.W.3d at 165 (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25[3][d], at 135 (4th ed. 2003)). Such evidence "is, of course, prejudicial to [the defendant] as all evidence of culpability is in a criminal proceeding" but is still properly admissible so long as it is not "*unduly* prejudicial because it is not unnecessary or unreasonable." *Luna v. Commonwealth*, 460 S.W.3d 851, 873 (Ky. 2015).

6

In this case Bullock's intent was the central, if not only, issue because the Commonwealth was endeavoring to prove that he had either intentionally or wantonly ("proof of motive" or "intent") caused serious injury to, or attempted to kill, his wife while Bullock wanted the jury to believe that his wife's injuries were the result of a mistake or accident ("absence of mistake or accident").

While Bullock's prior assaults on his wife were not performed in the same manner as the charged offense, the past assaults and charged crime were still "similar acts" in the sense of being probative of (a) whether Bullock intentionally caused serious physical harm to his wife; and (b) negating his claim of an unintentional accident. When a defendant's mental state is disputed as it was here, prior bad act evidence is admissible to prove whether the defendant had the needed mental state to commit the crime. *Walker v. Commonwealth*, 52 S.W.3d 533, 536 (Ky. 2001). Therefore, any evidence which could contribute to resolving the issue of Bullock's motive, intent, or lack of any accident or mistake, were both relevant and probative. Accordingly, our discussion will focus on whether the evidence admitted was more prejudicial than probative, and if so, whether its admission was harmless.

> As a general rule, the erroneous admission of evidence in violation of state law is not a federal constitutional error. And, as the Supreme Court of the United States noted in *United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983):
>
> > Since *Chapman* [*v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless,

7

> including most constitutional violations . . . . The goal, as Chief Justice Traynor of the Supreme Court of California has noted, is "to conserve judicial resources by enabling appellate courts to cleanse the judicial process of prejudicial error without becoming mired in harmless error."

*Meece v. Commonwealth,* 348 S.W.3d 627, 664 (Ky. 2011).

> Criminal Rule 9.24 states that "no error in either the admission or the exclusion of evidence" will warrant reversal unless the "denial of such relief would be inconsistent with substantial justice." The harmless error inquiry "is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky.2009) (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)) (alteration in original).

*Elery v. Commonwealth,* 368 S.W.3d 78, 85 (Ky. 2012) (footnote omitted). Therefore, if we conclude that evidentiary errors occurred, reversal is not warranted if they are harmless.

We do not believe that the prejudicial effect of Bullock's history of domestic violence towards his wife was outweighed by the probativeness of the testimony. We have consistently held that evidence of similar acts perpetrated against the same victim is "almost always admissible," under KRE 404(b), because it will almost always be significantly probative of a material issue aside from the defendant's character. *Driver v. Commonwealth,* 361 S.W.3d 877, 884 (Ky. 2012) (quoting *Harp v. Commonwealth,* 266 S.W.3d 813, 822 (Ky. 2008)).

8

Prior threats and harm against the same victim show intent, motive and absence of mistake. *See, e.g.*, *id.* at 844-45.[2]

In this matter, the evidence of Bullock's prior assaults on his wife was similarly probative. The prejudice to him was significantly less than the probative value especially when viewed in the context of the rest of the testimony and evidence admitted. Thus, we find no error in the trial court's decision to admit the KRE 404(b) evidence in question and we cannot say that the trial court abused its discretion in admitting it.

**B. The Admission of Photographs of the Victim's Injuries Was Not Error.**

Bullock's second argument for reversal is that the admission of certain graphic photographs of the victim's injuries were unnecessary, given the abundance of oral testimony concerning the severity of her injuries, and were highly prejudicial. For the proposition that because their probative value was outweighed by the danger of undue prejudice, reversal is required, Bullock relies on KRE 403 and *Hall v. Commonwealth*, 468 S.W.3d 814 (Ky. 2015).

During the trial, testimony was provided describing a large avulsion (ripping of skin) injury to the victim's left leg and left elbow, skin tears around her body, a significant wound to her right knee, bruising on her face, rib fractures, a fractured pelvis, a torn liver, injured kidney, a compound fracture

---

[2] In *Driver*, the husband was charged with the attempted murder of his wife and we noted that in a domestic circumstance that even prior threats against the victim are probative of the defendant's motive and intent to commit the later crime. *See also Davis v. Commonwealth*, 147 S.W.3d 709, 722 (Ky. 2004) (former husband murdered his ex-wife's new boyfriend); *Richie v. Commonwealth*, 242 S.W.2d 1000, 1004 (Ky. 1951) (wife's murder of her husband).

of the femur, blood on her brain and "air escaping from her lungs." Bullock concedes that this testimony supported a finding of a "serious physical injury" under the definition found in KRS 500.080(15) which, he argues, makes the submission of graphic photographs of those injuries unnecessary and unduly prejudicial.

The photographs at issue were taken by a Sexual Assault Nurse Examiner while the victim was still hospitalized. When the Commonwealth began to introduce some of those photographs during the nurse's testimony, Bullock's counsel objected stating they were both "graphic" and "unnecessary."

In response the Commonwealth states that it had selected only ten out of the 100 available photos taken by the nurse and that for the victim's groin area injury it had chosen a photo with gauze obscuring the area making it less graphic representation than others. The trial court stated that the photos were "horrific, but the injuries are . . . so there's no requirement for the Commonwealth to dress these down," adding further, "they basically describe the injuries." In conclusion the trial court determined "to the extent that these will allow the witness to describe the depth and breadth of these injuries, I think it's appropriate. I don't think it's excessive."

The ten injury photos showed various areas of the victim's body and displayed abrasions and avulsions, an extensive injury to victim's upper left thigh and buttocks (with gauze obstructing what would have showed exposed muscle), and an external fixator on victim's leg placed to stabilize victim's fractured femur.

10

We must first note that Bullock merely conceding that his wife suffered serious injuries would not, as a general rule, allow him to exclude other evidence of those injuries. We have consistently held that the Commonwealth may "prove its case by competent evidence of its own choosing, and the defendant may not stipulate away the parts of the case that he does not want the jury to see." *Pollini v. Commonwealth,* 172 S.W.3d 418, 424 (Ky. 2005). However, the Commonwealth's right to dictate the specific evidence it uses to prove its case is not without limit.

The photographs in this case caused Bullock little if any undue prejudice. The photos in question are in fact on the milder side of photographic evidence presented in contemporary trials of violent assaults. The particular photos chosen as exhibits by the Commonwealth showed little that would be considered grotesque when compared to many, if not most, medical procedures or crime scene photographs or videos. It is unlikely that the mere fact that they showed partially unhealed wounds, especially after those wounds had been cleaned and treated, would arouse improper passion in the jury. We conclude that the photographs were probative yet minimally prejudicial, and we cannot say that their potential for prejudice significantly outweighed their probative value.

### C. Cumulative Error is Not Sufficient to Merit This Court's Reversal of The Trial Court's Decision.

Finding no error or abuse of discretion in the trial court's admission of prior-acts testimony and photographs of the victim's injuries, there can be no consideration of effect of cumulative errors in Bullock's trial.

11

### III. CONCLUSION

For the reasons set forth above, Bullock's conviction and the sentence imposed by the Jefferson Circuit Court are affirmed in all respects.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Joshua M. Reho
Louisville Metro Public Defender

COUNSEL FOR APPELLEE:

Daniel Cameron, Attorney General of Kentucky

Courtney E. Albini, Assistant Attorney General