RENDERED: JULY 18, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1368-MR

NICKOLAS OSCAR GENO                                APPELLANT

                    APPEAL FROM GRAVES CIRCUIT COURT
v.                HONORABLE KEVIN D. BISHOP, JUDGE
                        ACTION NO. 21-CR-00456

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, L. JONES, AND McNEILL, JUDGES.

JONES, L., JUDGE: Nickolas Oscar Geno (Geno) appeals as a matter of right the judgment of the Graves Circuit Court sentencing him to a term of five years' imprisonment following his conviction of Sexual Abuse in the First Degree. After careful review, we reverse Geno's conviction and sentence and remand for a new trial.

## I.    FACTUAL AND PROCEDURAL HISTORY

Geno was in an approximately eight-year relationship with S.S. who had two children from a prior relationship, B.F. (the victim in the present case) and P.F. (B.F.'s older sister).  Geno and S.S. also had two children together.  The relationship was very strained and acrimonious.

In December 2020, B.F., who was fourteen years old at the time, was asleep in the bedroom which she shared with her younger brother.  During the night, B.F. was awakened and noticed Geno in the doorway to the bedroom.  Geno was facing her, with his bathrobe open and his pants pulled down.  B.F. could see that Geno was masturbating.  B.F. said nothing, and instead tried to roll over, close her eyes, and go back to sleep.  Geno eventually left.  B.F. did not immediately tell anyone about this incident because she felt scared.

Several months later, on February 14, 2021, Geno and S.S. had an argument that escalated, resulting in Geno shoving S.S., causing her to sustain injuries when she fell over a baby gate.  While this was happening, B.F. and P.F. were on the phone with their biological father.  Their father called the police who came to Geno and S.S.'s home, and Geno was arrested for Assault in the Fourth Degree.

Following Geno's arrest, S.S. filled out paperwork for an Emergency Protective Order (EPO).  The EPO was granted, and a domestic violence hearing

was scheduled for some time later. Before the hearing, B.F. disclosed the masturbation incident to S.S. S.S., in turn, relayed B.F.'s disclosure to the judge presiding over the domestic violence hearing. Following the judge's advice, S.S. and B.F. made a report of the masturbation incident to law enforcement. B.F. was interviewed by Lotus (a child advocacy center) where B.F. again disclosed the masturbation incident. On October 15, 2021, Geno was indicted on one count of Sexual Abuse in the First Degree.

On August 1, 2022, the Commonwealth filed the first of two notices of prior bad acts it intended to introduce at trial as required by Kentucky Rule of Evidence (KRE) 404(c). In the August 1, 2022 Notice (Record (R.) 24-26), the Commonwealth gave notice it intended to introduce (1) two convictions for Indecent Exposure in the Second Degree (indecent exposure convictions) arising from two separate incidents in 2018 which involved two adult women; and (2) that on "six or seven" occasions, S.S. had discovered Geno masturbating in common spaces in the home where he could easily be seen by the children and had confronted him about his behavior. Specific to the two indecent exposure convictions, the Commonwealth argued the facts underlying the convictions were admissible under KRE 404(b) to show modus operandi. Following a hearing after the Defendant's written objection to the Commonwealth's August 1, 2022 Notice,[1]

---

[1] R. 52-55.

the trial court entered an order allowing introduction of the indecent exposure convictions and the masturbation incidents. The specifics of that order will be discussed further in this Opinion.

On May 30, 2023, shortly before trial was to start, the Commonwealth filed a second notice of its intent to introduce evidence of prior bad acts (R. 103-105), specifically the February 14, 2021 assault on S.S. and the EPO that was issued as a result of it. The Commonwealth argued that those events were "inextricably intertwined" with B.F.'s disclosure. Geno did not object to the May 30, 2023 Notice.

During trial, the Commonwealth called both adult victims from the prior indecent exposure convictions. Both gave detailed testimony regarding their interactions with Geno and their respective incidents. The first victim testified that while she was at a carwash in Murray in July 2018, she made eye contact with Geno, and they smiled at each other. The victim thought she might have known him. After she finished cleaning her vehicle, she proceeded to a nearby gas station while Geno followed her. Once the first victim arrived at the gas station, Geno pulled up to the pump across from her. The victim realized then that she did not know Geno. Geno rolled down his window, and told the victim, "You're so gorgeous. Do you want to go for a ride?" The first victim declined, and she returned to pumping gas. Geno remained in his vehicle, pulling down his pants

and masturbating. Once the first victim noticed this, she went into the gas station to call the police and Geno left.

Geno also encountered the second victim in July 2018. The second victim testified that she was at the same car wash in Murray as the first victim and saw Geno in his vehicle with his pants down and masturbating. The second victim yelled and cursed at Geno, and Geno apologized and asked her not to tell anyone. The second victim got her phone out to take a photo of Geno who covered his lap with a t-shirt just prior to her taking the photo. That photograph was introduced as an exhibit during the 2023 trial without objection. Geno ultimately pleaded guilty to two counts of Indecent Exposure in the Second Degree on February 12, 2019, related to these incidents.

Neither woman knew the other nor Geno prior to these events. B.F. was somewhat aware of these incidents as she testified that S.S. told her that Geno had been "arrested in Murray (Kentucky) for flashing and chasing down two girls." B.F. also testified that she had overheard Geno and S.S. arguing about Geno's masturbation in common areas of the house where the children might see.

Furthermore, relevant to this appeal, B.F., P.F., and S.S. testified about Geno's "controlling" and "narcissistic" behavior in the home, and P.F. testified that she believed Geno killed her dog. There was no objection to either of these latter points.

The jury found Geno guilty of Sexual Abuse in the First Degree and recommended a sentence of five years in the penitentiary. The trial court accepted the jury's recommended sentence and sentenced him accordingly.[2]

On appeal, Geno claims the trial court erred by allowing the Commonwealth to present evidence of the prior indecent exposure convictions. Geno also claims admission of evidence that he was "controlling" and "narcissistic" and that P.F. believed he killed her dog was improper but acknowledges that any error was unpreserved. Finally, Geno claims that even if the individual errors he alleges in his appeal are insufficient to warrant reversal, his conviction should nevertheless be reversed because of cumulative error.

## II.        **STANDARD OF REVIEW**

We review properly preserved objections to evidentiary rulings for abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 SW.2d 941, 945 (Ky. 1999). We review unpreserved issues for palpable error. Kentucky Rules of Criminal Procedure (RCr) 10.26; *Brewer v. Commonwealth*, 206 S.W.3d 343, 348-49 (Ky. 2006). "A

---

[2] After trial but prior to final sentencing, Geno sought to fire his trial counsel due to his belief that trial counsel slandered and disparaged him during trial. The trial court allowed Geno's trial counsel to withdraw and appointed counsel for Geno for final sentencing.

finding of palpable error must involve prejudice more egregious than occurring in reversible error, . . . and the error must have resulted in 'manifest injustice.'" *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky. 2005), *overruled on other grounds by Anderson v. Commonwealth*, 670 S.W.3d 884 (Ky. 2023) (citations omitted).

## III.       **ANALYSIS**

This case presents an opportunity for this Court to provide the bench and bar with guidance on the application – and limits – of KRE 404(b). KRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> >
> > (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

All relevant evidence is presumptively admissible, unless provided otherwise by the Federal or Kentucky constitution, by statute, by other evidentiary rules, or by rules adopted by our Supreme Court. KRE 402; *see also Burton v. Commonwealth*, 300 S.W.3d 126, 145 (Ky. 2009) (Minton, C.J., concurring in part, and dissenting in part) ("All relevant evidence is presumptively admissible under

[KRE] 402."). KRE 404(b) is one of those "otherwise" rules, and "has always been interpreted as *exclusionary* in nature." *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994) (emphasis original).

The purpose of KRE 404(b) in criminal trials has long existed in our jurisprudence and predates the modern Kentucky Rules of Evidence themselves; "[u]ltimate fairness mandates that an accused be tried only for the particular crime for which he is charged." *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky. 1982). In *Jones v. Commonwealth*, 198 S.W.2d 969, 970 (Ky. 1947), our highest Court[3] stated, "[i]t is not competent to prove a habit or pre-disposition to commit the particular crime or to show that the accused is a criminal generally." Explaining why such a rule exists, our Supreme Court has observed:

> Against the hoary proposition that we welcome any evidence tending to make a material fact, i.e., an element of the offense, appear more likely or less likely than it would appear absent that evidence, is counterpoised the equally venerable rule that a defendant may not be convicted on the basis of low character or criminal predisposition, *even though* such character or predisposition makes it appear more likely that the defendant is guilty of the charged offense. The upshot is that evidence of criminal conduct other than that being tried is admissible and only if its probative value on that issue outweighs the unfair prejudice with respect to character.

*Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992).

---

[3] At the time, the Kentucky Court of Appeals was the highest Court in the Commonwealth.

While the very language of KRE 404(b) makes clear that evidence of other crimes, wrongs, or acts is *never* admissible to prove character, KRE 404(b)(1)-(2) set forth proper purposes *other than character* for which evidence of other crimes or bad acts is admissible. It is true that "the specifically listed purposes are illustrative rather than exhaustive[.]" *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky. 1998) (citation omitted). However, our Supreme Court has warned that "[a]ny exceptions to the general rule that evidence of prior bad acts is inadmissible should be *closely watched* and *strictly enforced* because of the dangerous quality and prejudicial consequences of this kind of evidence." *Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) (internal quotation marks omitted) (emphasis added). As such, "trial courts must apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." *Bell*, 875 S.W.2d at 889.

To that end, our Supreme Court set forth a three-part test in *Bell* to apply when analyzing evidence under KRE 404(b). First, the trial court must look at relevance, *i.e.*, "[i]s the other crimes evidence relevant for some purpose other than to prove the criminal disposition of the accused?" *Bell*, 875 S.W.2d at 889. Second, the trial court must look at probativeness, *i.e.*, "[i]s the evidence of the [other] crimes sufficiently probative of its commission by the accused to warrant its introduction into evidence?" *Id*. at 890. Finally, the trial court must look at

prejudice, *i.e.*, "[d]oes the potential for prejudice from the use of other crimes evidence substantially outweigh its probative value?" *Id.*

### A. Indecent Exposure Offenses

### 1. *Relevance*

In examining whether the trial court properly admitted evidence of Geno's two prior indecent exposure convictions, we first note that because the Commonwealth is the proponent of such evidence, "the burden lies with the prosecution to provide an alternate base for admission of the evidence apart from its propensity relevance." *Anderson*, 231 S.W.3d at 120. Furthermore, we agree with federal courts interpreting similar Federal Rule of Evidence (FRE) 404(b) that "a proponent's incantation of the proper uses of such evidence under the rule does not magically transform inadmissible evidence into admissible evidence." *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999). Thus, because KRE 404(b) is, by its nature, a rule of exclusion and the proponent must show a non-propensity purpose for its admission, *a fortiori*, the proponent should be held strictly to the non-propensity purposes identified.

As stated earlier in this Opinion, in its August 1, 2022 Notice of Prior Bad Acts, the Commonwealth stated it intended to use the evidence of the prior indecent exposure convictions to show "intent, motive, or common plan" as well as "modus operandi." At the hearing following Geno's written objection, the

-10-

Commonwealth also added that the prior convictions also show a "lack of mistake." Applying *Bell*, the trial court found that the two indecent exposure incidents were admissible to show modus operandi and lack of mistake and that the probative value of those two incidents outweighed any prejudice to Geno. R. 78-79. The trial court ordered that the Commonwealth would be allowed to introduce the evidence of the two indecent exposure convictions "including the factual basis of each conviction." R. 79. Furthermore, in its order the trial court opined that "[Geno's] acts are becoming more sinister by going from stalking females in public places while masturbating to masturbating near minor children in a restricted area." R. at 78.

As the trial court did, we apply *Bell*. We first look to whether the two prior indecent exposure incidents are "relevant for some purpose other than to prove the criminal disposition of the accused?" *Bell*, 875 S.W.2d at 889. As the trial court claimed those two incidents are relevant to establish modus operandi and lack of mistake, we shall analyze those two grounds.

"Modus operandi" is defined as "[a] method of operating or a manner of procedure; esp., a pattern of criminal behavior so distinctive that investigators attribute it to the work of the same person[.]" *Modus Operandi*, BLACK'S LAW DICTIONARY (12th ed. 2024). Modus operandi acts to prove "motive, intent, knowledge, . . . or absence of mistake." *English*, 993 S.W.2d at 944. In sexual

-11-

misconduct cases, evidence as to modus operandi can be used to establish that a defendant "knew what he was doing (knowledge), he did it on purpose (intent, absence of mistake or accident), and he did it for his own sexual gratification (motive)." *Id.* However, to qualify as evidence of modus operandi, our Supreme Court instructs that:

> the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea*. If not, then the evidence of prior misconduct proves only a criminal disposition and is inadmissible.

*Id.* (citations omitted).

The "striking similarity" does not mean that the prior offenses and the charged offense have only a few facts in common. Instead, as instructed in *Woodlee v. Commonwealth*, 306 S.W.3d 461, 464 (Ky. 2010):

> [t]to indicate modus operandi, the two acts must show "striking similarity" in factual details, . . . such that "if the act occurred, then the defendant almost certainly was the perpetrator[.]" . . . That is, the facts underlying the prior bad act and the current offense must be "simultaneously similar *and so peculiar or distinct*," . . . that they almost assuredly were committed by the same person.

(Citations omitted.)

Furthermore, modus operandi can be described as "a pattern of behavior so distinctive that it can reasonably only be attributed to a particular

-12-

individual." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1384 (S.D. Fla. 2010) (interpreting FRE 404(b)). *Royal Bahamian Association* used the film *Point Break*[4] to illustrate this point:

> A prime example of modus operandi can be found in the movie Point Break. In that movie, the bank robbers consistently wore masks of former U.S. presidents while committing robberies. Use of these specific types of masks is unique. Had the bank robbers, for instance, merely worn ski masks, then it would not have been unique enough to constitute a modus operandi.

*Id.* at 1384 at n.3.

In the present case, the trial court found that "the facts of the prior convictions for indecent exposure and the factual basis for these convictions are so similar in nature as to be admissible to prove . . . [modus operandi.]" While we acknowledge "it is not required that the facts be identical in all respects," *Dickerson v. Commonwealth*, 174 S.W.3d 451, 469 (Ky. 2005), the two prior convictions and the offense charged can be distinguished more by their dissimilarities than their common facts. In the two prior convictions, Geno approached two strangers, both adult women, in daylight, at a car wash, in public, and in his car. In the present case, Geno was masturbating in the presence of his girlfriend's minor daughter in their home, at nighttime, while he supposedly presumed she was asleep. Furthermore, in the two prior convictions, Geno either

---

[4] 20th Century Fox, 1991.

first made verbal contact with the adult victim or pulled up near the victim in his vehicle; in the present case, there is nothing to indicate that Geno made contact with B.F. prior to masturbating in her presence.

To illustrate why the factual differences in the two prior indecent exposure convictions are too dissimilar to the present charged offense to qualify as modus operandi¸ we note the facts in *Leach v. Commonwealth*, 571 S.W.3d 550 (Ky. 2019). In *Leach*, the Kentucky Supreme Court found that the facts were similar enough to qualify as modus operandi, but "tested the limits" of the exception. *Id.* at 557.

In *Leach*, the defendant was tried for sexually assaulting Misty S. from 1985 to 1988. *Id.* at 553. The Commonwealth gave notice of its intent to offer testimony of Tracy C., whom the defendant had been convicted of assaulting in 1987, to show modus operandi. *Id.* at 554-55. The Supreme Court noted the similarities and differences as follows:

> Here, while the two crimes are not exactly identical, they are strikingly similar. Both sets of events took place during the same approximate time frame. Leach sexually abused and sodomized Misty S. between 1985 and 1989. Leach sexually abused Tracy C. in 1987 or 1988. Both girls are related to Leach by marriage – Misty S.'s aunt was married to Leach, and Tracy C. was Leach's second cousin by marriage. Both were similar ages when Leach perpetrated the abuse. Misty S. was between 9 and 14 years old when Leach sexually abused and sodomized her. Tracy C. was 11 years old when Leach sexually abused her. Leach's sexual abuse of both of the girls progressed

-14-

from kissing to fondling. While these similarities weigh in favor of a modus operandi, they do not weigh heavily in favor, as they mostly go towards the statutory elements of the crimes. Most striking, however, is the way in which Leach secluded each of the girls in order to perpetrate his abuse. In both cases, he devised a game to play in the woods behind his house, using a motor vehicle, to get the girls alone. In Misty S.'s case, this was a game called "taxi," and it used an old car. In Tracy C.'s case, this was a game of hide and seek which used four-wheelers. In the course of these games, he was able to be alone in the woods behind his house with each of the girls. In both cases, he could use the sound of the approaching motor vehicle to warn him that others were getting close.

The two crimes are not identical, and the differences are worth discussing as well. The acts that Leach performed on each of the girls were different. He kissed Misty S., touched her vagina, digitally penetrated her, forced her to touch his penis, performed oral sex on her, and forced her to perform oral sex on him. Leach only kissed Tracy C. and touched her breasts. The sexual acts were perpetrated on Misty S. over a period of years, while the acts performed on Tracy C. all occurred on one day. These differences, however, do not counteract the similarity of the crimes, especially because Tracy C. disclosed the abuse very close in time to its occurrence and was not alone with Leach again.

There is one other difference in the crimes that is significant. This difference is the location in which the abuse occurred. Tracy C.'s abuse occurred only in the woods behind Leach's house. The abuse perpetrated on Misty S. occurred in the woods behind Leach's house, as well, but also in a bedroom and laundry room in Leach's house. This Court has previously found that the exact geographic location of the crimes is not dispositive on the issue. . . . The importance of this difference is lessened even more when considered in light of the fact that Misty

S.'s abuse occurred for years while Tracy C.'s abuse occurred on one day.

*Id.* at 555-56.

If the factual similarities between the assault on Misty S. and Tracy C. in *Leach* "test the limits" of modus operandi, then the present case certainly falls short. The Commonwealth argues on appeal that "the facts [between the indecent exposure convictions and the charged offense] are strikingly similar: Geno's knowing exposure of his penis to females and then masturbating in their presence." Appellee's Brief at 11. While we would wish otherwise, at least for the purposes of modus operandi, we cannot say that that a man exposing his genitals and masturbating in the presence of an unwilling victim in and of itself would qualify as "so peculiar and distinct" that such actions "can reasonably be attributed to a particular individual."

Furthermore, in *Clark*, our Supreme Court instructed "conduct that serves to satisfy the statutory elements of an offense will not suffice to meet the modus operandi exception." 223 S.W.3d at 98. As "masturbation in the presence of another" is one element of Sexual Abuse in the First Degree under Kentucky Revised Statutes (KRS) 510.110(1)(c)2., masturbation in the presence of an unwilling victim alone cannot be the basis for modus operandi.

Nor do we agree that the two indecent exposure convictions were admissible to show lack of mistake. Examples of this exception include

introducing evidence of prior acts of violence against other children to establish intent when a defendant claims that he lacked the intent to commit a criminal offense. ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK, § 2.30[4][d] (2022). For example, the lack of mistake exception is appropriately used to admit evidence that a defendant had previously physically abused the victim to counter a claim that a shooting was accidental. *See Moseley v. Commonwealth*, 960 S.W.2d 460, 461 (Ky. 1997). However, in the present case, Geno does not claim that he masturbated in B.F.'s presence by accident or that he was engaged in some other act which B.F. mistakenly believed to be masturbation. Instead, he denied the incident ever occurred at all. Thus, because the indecent exposure convictions do not meet either of the trial court's enumerated exceptions to KRE 404(b), the indecent exposure convictions are not relevant to any purpose other than to prove Geno's criminal disposition and thus fail the first prong of *Bell*.

### 2. *Probativeness*

In examining the second prong of *Bell*, the trial court (as well as this Court) must determine if the indecent exposure convictions are "sufficiently probative of [their] commission by the accused to warrant [their] introduction into evidence[.]" 875 S.W.2d at 890. "Probativeness" for this prong simply asks "could the jury 'reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts[?]'" *Jenkins v. Commonwealth*, 496 S.W.3d 435,

-17-

457 (Ky. 2016) (citations omitted). As we will explain below, "probativeness" has a different definition when discussing the third *Bell* prong; however, for the purposes of the second *Bell* prong, it is enough to say that the Defendant's guilty pleas to the prior indecent exposure convictions is more than sufficient to establish that those prior "bad acts" occurred and that Geno committed those acts.

### 3. *Prejudice*

The final *Bell* prong asks if "the potential for prejudice from the use of [other crimes, wrongs, or acts] evidence substantially outweigh[s] its probative value?" 875 S.W.2d at 890. Essentially, this inquiry instructs the trial courts and reviewing courts to apply KRE 403.[5] *Meece v. Commonwealth*, 348 S.W.3d 627 (Ky. 2011). In analyzing whether evidence should be excluded under KRE 403, "a trial court must consider three factors: the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth." *Combs v. Stortz*, 276 S.W.3d 282, 297 (Ky. App. 2009).

As explained in *Hall v. Commonwealth*, 468 S.W.3d 814, 823-24 (Ky. 2015), "[t]he 'probative value' or 'probative worth' of evidence is a measure of

---

[5] KRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

how much the evidence tends to make the fact it is introduced to prove more or less probable. The probative force of a particular item of evidence is, therefore, inherently dependent upon the overall probativeness of other available evidence on that point." Indeed, "evidence should not be viewed 'on an island' when making estimates of probative value and undue prejudice but, rather, the 'full evidentiary context of the case' should be considered in evaluating the 'discounted' probative value in light of other evidence going to the same point." *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997)). In other words, the probative value is measured on a sliding scale, relative to other evidence in a case.

Regarding prejudice, we note that "'[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Ford Motor Corp. v. Fulkerson*, 812 S.W.2d 119, 127 (Ky. 1991) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). "Evidence is unfairly prejudicial 'if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.'" *Brown v. Commonwealth*, 313 S.W.3d 577, 619 (Ky. 2010) (quoting *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003)).

In applying KRE 403 as part of *Bell*, our Supreme Court has noted that "a trial court must consider in the balancing test evidentiary alternatives (other available evidence to prove the fact in issue." *Norris v. Commonwealth*, 89

-19-

S.W.3d 411, 416 (Ky. 2002) (quoting LAWSON, *supra*). In performing that analysis, "the trial court should include in the record the reasons for its finding on admissibility." *Id.*

Here, the trial court's analysis of the prejudicial effect of the indecent exposure convictions against the probative value was scant and conclusory:

> The Court must next determine whether the potential for undue prejudice by admitting this evidence [of the prior indecent exposure convictions] is substantially outweighed by its probative value. Here, the Court is convinced the introduction of such evidence will be prejudicial to the Defendant. The Court finds such prejudice is outweighed by the probative value in proving the Commonwealth's case.

R. at 78-79.

While we do not expect the trial court to perform a completely exhaustive analysis, there must be *some* explanation of the balancing test undertaken by the trial court. For example, the trial court concludes that the introduction of the prior indecent exposure convictions is prejudicial to Geno but does not explain *how* it is prejudicial. While we could infer the prejudice to be that Geno would more likely be convicted with the inclusion of evidence of the prior convictions, and, as discussed above, the trial court has great deference in its evidentiary rulings, there must be some analysis for us to review.

Even so, we note that the prejudicial effect of the two prior indecent exposure convictions substantially outweighs the probative value, especially

considering other more probative evidence that Geno does *not* challenge on appeal, namely evidence that Geno had masturbated in several common areas of the home and that he had been warned that the children might be able to see him masturbating. Furthermore, B.F. was not the victim in the prior indecent exposure convictions,[6] and the prior indecent exposure convictions were not the reason B.F. came forward with the current allegations.[7] Nor were prior indecent exposure convictions used as leverage to keep B.F. from reporting Geno's actions.[8] Moreover, we note that the probative value of the prior indecent exposure convictions is lessened as they occurred several years prior to the charged incident involving B.F. *See Woodlee*, 306 S.W.3d at 465 (stating that temporal remoteness is a factor to be considered when "balancing the probative value of [the bad act evidence] and the undue prejudice it caused") (internal quotation marks and citations omitted). Thus, with nothing to connect the prior indecent exposure incidents to the incident involving B.F., coupled with the striking lack of similarity

---

[6] *See Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002), *overruled on other grounds by Mason v. Commonwealth*, 559 S.W.3d 337 (Ky. 2018) ("[E]vidence of similar [sexual abuse] acts perpetrated against the same victim are almost always admissible[.]").

[7] *See Leach*, 571 S.W.3d at 557-59.

[8] *See Alford v. Commonwealth*, 338 S.W.3d 240, 250 (Ky. 2011) ("We believe the evidence regarding threats and violence by Appellant against not only [the victim], but her other family members as well, was relevant in light of [the victim's] testimony that she was afraid to report the abuse out of fear that Appellant would hurt her or her family.").

between those incidents and the present matter and passage of time between those incidents, the indecent exposure incidents have little probative value.

The prejudice, on the other hand, was substantial. The trial court ordered that the Commonwealth was "permitted to introduce evidence of [Geno's] two prior Indecent Exposure in the Second-Degree convictions including the actual basis of each conviction." R. at 79. The Commonwealth did so by calling both victims to testify in detail regarding Geno's indecent exposure offenses. Even though it came in without Geno's objection, the Commonwealth also introduced a photograph of Geno in his car with a shirt over his lap after being caught by the second victim. Not only was that photograph shown to the jury during that victim's testimony, it was displayed part way through the Commonwealth's opening statement, and remained there for the rest of the Commonwealth's opening statement, even while the Commonwealth described other points.

We also note that "[e]ven where evidence of a prior crime has some relevance, the trial judge *must* use some discretion in deciding to what extent the prior bad act may be utilized without prejudice." *Brown v. Commonwealth*, 983 S.W.2d 513, 516 (Ky. 1999) (emphasis added). Thus, *even if* the prior indecent exposure convictions satisfied the first prong of *Bell* (which they do not), the trial court was *required* to take some prophylactic measures to limit prejudice. No such measures were taken here; rather, the trial court's order implied that the

Commonwealth should take a broad view of what evidence to introduce regarding the indecent exposure convictions.

Finally, a matter of great concern is the trial court's statement in its November 11, 2022 Order that the prior indecent exposure convictions and B.F.'s allegations convinced the trial court that "[Geno's] acts are becoming more sinister by going from stalking females in public places while masturbating to masturbating near minor children in a restricted area." R. at 78. First, that statement suggests the trial court (before the trial had even begun) had concluded that Geno was guilty of the charged offense. Second, in relation to KRE 404(b), that statement shows the trial court may have allowed evidence from the prior convictions to unduly influence its judgment. Drawing the line between probative value and prejudicial influence is precarious. If it is difficult for seasoned, experienced, and learned legal professionals to do so, how much more difficult is it for a jury. This is the exact reason why KRE 404(b) was enacted.

### 4. *Harmless Error*

The Commonwealth claims that even if the trial court erred in allowing evidence of the two prior indecent exposure convictions, such error was harmless. We cannot agree. An evidentiary error is subject to the harmless error analysis. *Dixon v. Commonwealth*, 519 S.W.3d 396, 399 (Ky. App. 2017). As explained in *Allen v. Commonwealth*, 395 S.W.3d 451 (Ky. 2013):

> The test for [harmless error] is whether the error substantially swayed the verdict. "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'"

*Id.* at 467 (citations omitted).

In the present case, the Commonwealth argues that any error was harmless because: (1) "there was compelling evidence from the victim that she observed Geno in her doorway, with his penis exposed and masturbating"; (2) "[t]he evidence showed that Geno had a practice of masturbating around the house, in public areas, where he could have been easily seen by the children"; and (3) "Geno himself testified that he had been in counseling for his indecent-exposure actions." Appellee's Brief at 12.

We take the opposite view of each of the Commonwealth's points. Even with the Commonwealth's characterization of B.F.'s testimony as "compelling," she is still the only witness who could testify that Geno committed the charged act. Geno's testimony about seeking counseling for the indecent exposure actions would not have been necessary to give context to those actions had the trial court properly excluded the evidence. The evidence of Geno masturbating around the house in common areas where he could be seen belies our earlier point that such evidence was far more probative to the charged act than the

indecent exposure convictions; hence, the evidence of the prior indecent exposure convictions held little probative value, and that value was substantially outweighed by its prejudicial effect.

Moreover, as we have previously stated, even if the prior indecent exposure convictions were admissible under KRE 404(b), the law requires careful instruction around the introduction of such evidence to limit the risk of undue prejudice. The detailed testimony against Geno provided by the two prior adult victims about their experience coupled with the prolonged display of the incriminating photograph of Geno taken by one of those victims was far beyond what was necessary to establish any of the probative purposes (modus operandi and absence of mistake) put forth by the Commonwealth and the trial court. Thus, we believe the erroneous admission of evidence of Geno's prior indecent exposure convictions, especially in such abundance and detail, had a substantial influence on the jury's deliberations and casts grave doubt on the verdict.

In sum, the evidence of the two prior indecent exposure convictions should have been excluded as they do not fit within any exception provided by KRE 404(b), their prejudice substantially outweighed any probative value, and the trial court's reasoning implied that the convictions were admitted specifically to show that Geno was a sexual predator. We further believe such error was not harmless, and as such we are required to reverse Geno's conviction.

B. Unpreserved Errors

Geno also complains that the trial court should have excluded testimony from P.F. that she believed Geno killed her dog and that the trial court should have excluded testimony that Geno "was manipulative, controlling, and narcissistic[.]" The Commonwealth asserts in its brief that the reason why trial counsel did not object to such testimony was a matter of trial strategy, as Geno "founded his defense on the dysfunctional nature of the household[,]" particularly because his trial counsel argued during closing argument that Geno *was* a controlling person. Appellee's Brief at 16-18. Geno concedes that part of his trial strategy was to show the dysfunction of the household (albeit that S.S. was the cause of the dysfunction), but argues that we should consider that his "trial counsel slandered and disparaged him during trial[,]" so much so that Geno fired his trial counsel prior to final sentencing. Appellant's Reply Brief at 2.

We agree that trial counsel's failure to object to either line of testimony was a part of trial strategy. Geno's clear strategy was to highlight B.F.'s animosity towards Geno and the dysfunction in the home as a reason why she might lie about the masturbation incident. We decline reviewing for palpable error when trial strategy is the reason for declining to object. *See Alexander v. Commonwealth*, 220 S.W.3d 704, 711 (Ky. 2007).

## IV.     <u>CONCLUSION</u>

Because the two prior indecent exposure convictions did not satisfy any exception to KRE 404(b), their only possible use was to portray Geno as a sexual predator which KRE 404(b) does not allow.  Furthermore, the risk of unfair prejudice arising from those convictions far outweighs their scant probative value. For those reasons, we must reverse Geno's conviction and sentence and remand for a new trial, with the directions to the trial court to exclude any testimony of the two indecent exposure convictions.

We view any remaining contentions of error as moot, unpersuasive, unpreserved, or without merit.

ALL CONCUR.

BRIEF FOR APPELLANT:

Kayla D. Deatherage
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky